UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:22-cv-60194-JEM/Becerra

CHANEL, INC.,

    Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** came before the Court on Plaintiff's Motion for Entry of Final Default Judgment Against Defendants and Memorandum of Law in Support Thereof (the "Motion" or "Motion for Default"). ECF No. [45]. Defendants[2] did not file a response to the Motion and the time to do so has passed. Upon due consideration of Plaintiff's Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Plaintiff's Motion be **GRANTED**.

**I.    BACKGROUND**

Plaintiff, Chanel Inc. ("Plaintiff" or "Chanel") is the owner of the trademarks at issue, "which are used in connection with the manufacture and distribution of high-quality luxury goods"

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [46].

[2] Defendants are listed in the Schedule "A" chart provided by Plaintiff, which lists the Individuals, Business Entities, and Unincorporated Associations that make up all Defendants in this action. *See* ECF Nos. [18] at 26–29; [45] at 21–25.

1

(the "Chanel Marks"). ECF Nos. [18] ¶ 15; [45] at 2. Defendants are a list of individuals, business entities, and unincorporated associations (the "Defendants"), identified in Schedule "A." *See* ECF No. [45] at 21–25. Defendants, through the fully interactive, commercial Internet websites and supporting domain names operating under the domain names listed in Schedule A, have advertised, promoted, distributed, offered for sale, and/or sold goods bearing and/or using counterfeit and confusingly similar imitations of the Chanel Marks (the "Counterfeit Goods"). Plaintiff contends that Defendants have engaged in this activity despite the facts that Defendants "had full knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith" and Defendants never have had the right to use the Chanel Marks, but nevertheless engaged in this activity. *See id.* at 4. Through the use of investigators, Plaintiff has purchased, reviewed, and visually inspected the items bearing at least one of the Chanel Marks offered for sale by Defendants through the Internet websites operating under the Seller IDs and Subject Domain Names and determined the products to be unauthorized, non-genuine versions of Plaintiff's products. *See id.* at 4–6; *see also* ECF Nos. [6]; [6-1]–[6-8]; [45-1].

As a result, Plaintiff filed its Complaint on January 27, 2022, ECF No. [1], and subsequently filed an Amended Complaint for Damages and Injunctive Relief Against Defendants on April 11, 2022, ECF No. [18]. Specifically, Plaintiff seeks monetary and injunctive relief for Defendants' trademark counterfeiting and infringement activities under the Lanham Act and common law. *See generally* ECF No. [18].

On January 28, 2022,[3] Plaintiff filed its *Ex Parte* Application for Entry of a Temporary

---

[3] On January 28, 2022, Chanel filed its *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. [7], which

Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [6], which the Court granted on March 25, 2022, ECF No. [10]. Thereafter, on April 28, 2022, the Court entered an Order Adopting Magistrate Judge's Report and Recommendation, thereby granting Plaintiff's Motion for Preliminary Injunction. ECF No. [34]. In the Temporary Restraining Order and Preliminary Injunction, the Court ordered Amazon Payments, Inc., PayPal, Inc., Stripe, Inc., and their related companies and affiliates to identify and restrain all funds in Defendants' associated payment accounts, including all financial accounts tied to, associated with, or that transmit funds into the respective Defendants' financial accounts, and to divert those funds to a holding account for the trust of the Court. ECF Nos. [10] at 5–7; [34] at 3–4.

On May 4, 2022, Plaintiff entered its Request for Clerk's Entry of Default. ECF No. [40]. A Clerk's Entry of Default was entered against all Defendants on May 5, 2022. ECF No. [41]. On May 6, 2022, the Court entered an Order on Final Default Judgment Procedure, requiring Defendant to respond by May 19, 2022, and requiring Plaintiff to file a motion for final judgment by May 26, 2022. ECF No. [42]. Plaintiff thereafter timely filed its Motion for Default. ECF No. [45].

## II. ANALYSIS

"Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1258 (S.D. Fla. 2016). However, "[a] defendant's

---

the Court granted on March 25, 2022, ECF No. [12], authorizing Chanel to serve Defendants with the Summonses, Complaint, and other filings and discovery in this matter via e-mail and via website posting, by posting copies of the same on Chanel's designated serving notice website. Plaintiff then served all Defendants via e-mail service and via website posting. *See* ECF Nos. [23], [35].

default does not in itself warrant the court entering a default judgment." *Id.* (quoting *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004)). Indeed, the Court's decision whether to grant a motion for default is discretionary. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). A defendant is not held to admit facts that are not well pled or to admit conclusions of law; accordingly, the Court must determine whether the complaint adequately states a claim upon which relief may be granted. *See id.* (citing *Nishimatsu*, 515 F.2d at 1206); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default[.]").

To adequately state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Well-pled factual allegations are deemed to have been admitted by the defaulting defendant. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). Once liability is established, the Court must also assess forms of relief. *See Chanel, Inc. v. French*, No. 05-cv-61838, 2006 WL 3826780, at *2 (S.D. Fla. Dec. 27, 2006). Remedies for trademark infringement include injunctive relief. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019).

### A. Plaintiff Has Sufficiently Pled its Claims.

Plaintiff's Amended Complaint includes five claims against Defendants. *See generally* ECF No. [18]. Count I alleges trademark counterfeiting and infringement pursuant to Section 32 of the Lanham Act, in violation of 15 U.S.C. § 1114. *Id.* ¶¶ 44–50. Count II alleges false designation of origin pursuant to Section 43(a) of the Lanham Act, in violation of 15 U.S.C. § 1125(a). *Id.* ¶¶ 51–58. Count III alleges cybersquatting pursuant to Section 43(d) of the Lanham Act, in violation of 15 U.S.C. § 1125(d), against Defendant Numbers 28 and 32, only. *Id.* ¶¶ 59–68. Count IV alleged common law unfair competition. *Id.* ¶¶ 69–73. Finally, Count V alleges

4

common law trademark infringement. *Id.* ¶¶ 74–79. The undersigned analyzes whether Plaintiff has adequately stated each claim.

### 1. Counts I, II and V

To prevail on its claim of trademark infringement in violation of 15 U.S.C. § 1114 in Count I, Plaintiff would have to "demonstrate '(1) that [it] had prior rights to the mark at issue and (2) that the defendant[s] had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Fendi S.r.l. v. Bag*, No. 19-cv-61356, 2019 WL 4693677, at *2 (S.D. Fla. Aug. 28, 2019) (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)). As to Count II, "[t]he test for liability . . . under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim — *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Id.* at *3 (citation omitted). Moreover, as to Count V, "[t]he analysis of liability for Florida common law trademark enforcement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act." *Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-cv-60829, 2016 WL 8679081, at *5 (S.D. Fla. Nov. 3, 2016), *report and recommendation adopted*, No. 16-cv-60829, 2016 WL 8678880 (S.D. Fla. Dec. 20, 2016) (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004)). Accordingly, Plaintiff may establish liability as to Counts I, II, and V if it has adequately pled trademark infringement and that the infringement had a detrimental effect on Plaintiff. For the reasons that follow, the undersigned finds that Plaintiff has pled sufficient facts to establish trademark infringement.

As to the first element of a trademark infringement claim, Plaintiff has pled that it had prior rights to the Chanel Marks. *See* ECF No. [18] ¶¶ 11–17. The second element of trademark

infringement (as well as false designation of origin) requires that Plaintiff allege that Defendants' mark was so similar that it was likely to cause confusion or deception. In the Amended Complaint, Plaintiff alleges that "Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods" because Defendants' goods "are virtually identical in appearance to Chanel's genuine goods." *Id.* ¶¶ 47, 53. Additionally, the visual inspections and reviews conducted by Plaintiff support the allegations that Defendants have used counterfeit versions of the Chanel Marks, and that they use the Subject Domain Names to promote, advertise, distribute, and sell those counterfeit goods in interstate commerce. *See* ECF Nos. [6]; [6-1]–[6-8]; [18] ¶ 24; [45-1]. Further, Plaintiff has used the Chanel Marks "in interstate commerce to identify and distinguish Chanel's high-quality goods for an extended period of time." ECF No. [18] ¶ 16. The Chanel Marks, which are famous and distinctive and thus entitled to protection, have never been assigned or licensed to any of the Defendants in this matter and have never been abandoned. *Id.* ¶¶ 17–19. Defendants use identical copies of the Chanel Marks on inferior-quality, counterfeit products, and offer those products for sale on the Internet through the various Subject Domain Names, which is confusingly similar to the way in which Plaintiff uses its own authentic marks. *See generally id.* Thus, the undersigned finds that Plaintiff has adequately stated a cause of action as to Counts I, II, and V. *See Tiffany*, 2016 WL 8679081, at *3.

   **2. Count III**

To prevail on a cybersquatting claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), "a plaintiff must demonstrate that '(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly

similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit.'" *LFP IP, LLC v. Cybertech Mgmt. Corp.*, No. 18-cv-80898, 2019 WL 7841697, at *3 (S.D. Fla. Jan. 14, 2019) (quoting *Bavaro Palace, S.A. v Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006)).

Plaintiff alleges that "[t]he Chanel Marks were distinctive and famous at the time that Defendant Numbers 28 and 32 registered" their domain names and that those domain names "are identical to, confusingly similar to, or dilutive of at least one of the Chanel Marks." ECF No. [18] ¶¶ 62–64. Plaintiff also alleges that "Defendant Numbers 28 and 32's conduct is done with knowledge and constitutes a willful violation of Chanel's rights in the Marks" or, "[a]t a minimum, . . . constitutes reckless disregard for and willful blindness to Chanel's rights." *Id.* ¶ 65. By their default, Defendant Numbers 28 and 32 have admitted to each of these three elements. *See id.* ¶¶ 33–38; 59–68.

In addition to Defendant Numbers 28 and 32 admitting the allegations by default, Plaintiff has established the distinctiveness of its trademarks because it registered the marks. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.,* 161 F.Supp.2d 1339, 1349 (S.D. Fla. 2001)). Additionally, as to the third requirement, a court may consider a number of factors to determine whether a defendant acted in bad faith, including:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or

7

      endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

*Tiffany*, 2016 WL 8679081, at *4 (quoting 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(IX)).

      Defendant Number 28 has the domain name "chanelws.com" and Defendant Number 32 has the domain name "gucchanel.shop." ECF No. [18] at 27. As seen by the domain names and as argued by Plaintiff, "[t]he Cybersquatted Subject Domain Names incorporate one or more of Chanel's trademarks in their entirety surrounded by a descriptive or generic term, rendering the domain names nearly identical to at least one of Chanel's trademarks" and "[e]ven minor variations to a plaintiff's mark in a domain name can be confusingly similar." ECF No. [45] at 18. Accordingly, the undersigned finds that Plaintiff has sufficiently alleged bad faith on the part of Defendant Numbers 28 and 32. *See Victoria's Cyber Secret Ltd.* P'ship, 161 F.Supp.2d at 1351 (finding that domain names that included the trademark at issue, along with "the addition of minor or generic words[,]" "weigh[ed] heavily in favor of" finding bad faith as the domain names were "nearly identical" to the marks at issue and thus there was a "presumption of confusion"). Accordingly, Plaintiff has sufficiently pled its Count III claim.

### 3. Count IV

To prevail on a Florida common law unfair competition claim, a plaintiff must prove that:

> (1) the plaintiff is the prior user of the mark; (2) the mark is arbitrary, suggestive, or has secondary meaning; (3) the defendant is using a confusingly similar mark to indicate similar goods marketed in competition with the plaintiff in the same trade area in which the plaintiff has already established its mark; and (4) because of the defendant's action, consumer confusion regarding the defendant's goods is likely.

*Tiffany*, 2016 WL 8679081, at *5 (citing *PetMed Express, Inc.*, 336 F. Supp. 2d at 1217–19).

Plaintiff has adequately stated a claim as to Count IV such that Defendants admit the allegations by default. First, Plaintiff has pled that its use of the Chanel Marks predates Defendants' use. ECF No. [18] ¶ 17. Second, Plaintiff has alleged that the Chanel Marks are famous and have secondary meaning as identifiers of high-quality goods. *Id.* ¶¶ 19–22. As to the third and fourth elements, Plaintiff alleges that Defendants are "promoting and advertising, distributing, selling, and/or offering for sale" counterfeit goods that are "confusingly similar imitations of one or more of the Chanel Marks" and Defendants are doing so "through at least the e-commerce stores, interactive photo albums in tandem with various private messaging applications and/or services, or interactive, commercial Internet websites operating under the Seller IDs and Subject Domain Names." Accordingly, Plaintiff has established liability for Defendants' unfair competition, as alleged in Count IV.

### B. Plaintiff Is Entitled to Relief.

Given that Plaintiff has established Defendants' liability, as discussed above, the undersigned turns to the issue of the appropriate relief for each Count.

#### 1. Plaintiff is Entitled to a Permanent Injunction Against Defendants.

Pursuant to the Lanham Act, a court may issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of

trademark law. *Tiffany*, 2016 WL 8679081, at *5 (citing 15 U.S.C. § 1116(a)). To obtain a permanent injunction pursuant to 15 U.S.C. § 1116, a plaintiff must demonstrate that:

> (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). For trademark and unfair competition cases, "[i]njunctive relief is the remedy of choice . . . since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Id.* at *6 (quoting *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995)).

The undersigned finds that Plaintiff has met its burden to demonstrate that it is entitled to a permanent injunction against Defendants. First, Plaintiff has established that it has suffered and will continue to suffer irreparable injury because the counterfeit goods that are promoted, advertised, and offered for sale by Defendants are nearly identical to Plaintiff's genuine goods utilizing the Chanel Marks such that consumers would confuse Defendants' counterfeit goods for Plaintiff's genuine goods. *See* ECF No. [18] ¶ 24. Indeed, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *Tiffany*, 2016 WL 8679081, at *6 (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). Second, Plaintiff has no adequate remedy at law if Defendants continue their infringing activities because Plaintiff has no control over the quality of goods that are easily confused with theirs, and monetary damages alone will not cure the harm to Plaintiff's reputation. ECF No. [18] ¶¶ 31, 58. Third, the balance of hardships favors Plaintiff due to its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act. *See Tiffany*, 2016 WL 8679081, at *6. Finally, it is in the public interest to issue "a

permanent injunction against Defendants to prevent consumers from being misled by Defendants' products." *Atmos Nation, LLC v. Pana Depot, Inc.*, No. 14-cv-62620, 2015 WL 11198010, at *3 (S.D. Fla. Apr. 8, 2015)

Just as with the TRO and preliminary injunction previously awarded to Plaintiff in this matter, ECF Nos. [10], [34], Plaintiff has demonstrated that it is entitled to injunctive relief. Therefore, the undersigned **RECOMMENDS** that Plaintiff's request for an injunction be **GRANTED**.

### 2. Plaintiff Is Entitled to Statutory Damages.

In addition to injunctive relief, Plaintiff also seeks statutory damages as to its Count I counterfeiting claim, pursuant to 15 U.S.C. § 1117(c), and its Count III cybersquatting claim, pursuant to 15 U.S.C. § 1117(d). The undersigned addresses both grounds for damages below.

#### a. Damages as to Count I[4]

In trademark counterfeiting matters, the Lanham Act provides "that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $ 1,000.00 nor more than $ 200,000.00 per counterfeit mark per type of good." *Louis Vuitton Malletier v. aaaimitationbags.com*, No. 18-cv-62354, 2019 WL 2008910, at *5 (S.D. Fla. Mar. 29, 2019) (citing 15 U.S.C. § 1117(c)(1)). Moreover, where a court "finds Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $ 2,000,000.00 per mark per type of good. *Id.* (citing *id.* § 1117(c)(2)). Such damages are particularly appropriate in the default judgment context, given the difficulty to ascertain defendants' profits and that defendants have not responded to complaints or motions and have not participated in discovery.

---

[4] In the Motion for Default, "Chanel submits that judgment on Counts [II,] IV and V should . . . be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief." ECF No. [45] at 17, 20.

*See Tiffany*, 2016 WL 8679081, at *7 (citing *Tiffany (NJ) LLC v. Dongping*, No. 10-cv-61214, 2010 WL 4450451, at *6 (S.D. Fla. Oct. 29, 2010); *Rolex Watch U.S.A., Inc. v. Lynch*, No. 12-cv-00542, 2013 WL 2897939, at *6 (M.D. Fla. June 12, 2013); *Nike, Inc. v. Lynder*, No. 07-cv-01654, 2008 WL 4426633, at *4 (M.D. Fla. Sept. 25, 2008)). The Court has wide discretion in determining the appropriate amount of statutory damages, and statutory damages may be properly awarded even where a plaintiff is unable to prove actual damages due to defendants' infringement. *Louis Vuitton Malletier*, 2019 WL 2008910, at *5. Further, statutory damages in this context are "intended not just for compensation for losses, but also to deter wrongful conduct." *PetMed Express, Inc.*, 336 F.Supp.2d at 1220–21.

Here, Plaintiff has alleged that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing at least one counterfeit Chanel Mark. *See* ECF No. [18] ¶¶ 15, 24–25, 53. Plaintiff has also alleged that "Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Chanel" and that "Defendants are . . . each using counterfeits and infringements of one or more of the Chanel Marks to unfairly compete with Chanel and others." *Id.* ¶¶ 25, 71. Accordingly, "Defendants have defaulted on Plaintiff's allegations of willfulness" and courts may infer willfulness where defendants default. *Louis Vuitton Malletier*, 2019 WL 2008910, at *5 (citing *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003); *PetMed Express, Inc.*, 336 F.Supp.2d at 1217).

Based on Plaintiff's well-pled allegations and thus Defendants' liability, the Court is permitted "to award up to $ 2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendants do not continue their intentional and willful counterfeiting

activities." *Id.* Here, Plaintiff requests that the Court award statutory damages in the amount of $100,000.00 against each Defendant. ECF No. [45] at 17. Given the evidence available in this case, the goal of deterrence, that this amount falls within the statutorily permissible range, and that this amount is in line with awards in similar cases in this District, the Court finds, in its discretion, that an award of $100,000.00 as to each Defendant is just, as it "should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants — all stated goals of 15 U.S.C. section 1117(c)." *Louis Vuitton Malletier*, 2019 WL 2008910, at *6 (awarding $100,000.00 in statutory damages against each Defendant); *see also Tiffany*, 2016 WL 8679081, at *8. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion be **GRANTED** as to its request for Count I statutory damages.

### b. Damages as to Count III

Upon a finding of liability, pursuant to the ACPA, a court may "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." *Louis Vuitton Malletier*, 2019 WL 2008910, at *6 (quoting 15 U.S.C. § 1125(d)(1)(c)). Additionally, a plaintiff "may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just." *Id.* (citing U.S.C. § 1117(d)). Accordingly, Chanel contends that it "is entitled to the transfer and ownership of the Cybersquatted Subject Domain Names" and also "elects statutory damages and submits that in view of the Cybersquatting Defendants' intentional, wrongful behavior, an award in the amount of $10,000.00 against each of the Cybersquatting Defendants for their Cybersquatted Subject Domain Names . . . would be just." ECF No. [45] at 19. Because Plaintiff has established cybersquatting, as Defendant Numbers 28 and 32's domain

13

names are confusingly similar to at least one of Plaintiff's Chanel Marks, Plaintiff is entitled to the transfer and ownership of the domain names of Defendant Numbers 28 and 32, as well as $10,000.00 against each of Defendant Numbers 28 and 32. *See Taverna Opa Trademark Corp. v. Ismail*, No. 08-cv-20776, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 against a single defendant in statutory damages for domain name at issue). The undersigned finds this amount just, particularly given that the "statutory damages provision serves to deter wrongful conduct and to provide adequate remedies for trademark owners who seek to enforce their rights in court." *PetMed Express, Inc.*, 336 F.Supp.2d at 1221. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion be **GRANTED** as to its request for Count III statutory damages.

### III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Default, ECF No. [45], be **GRANTED**, and that the case be **DISMISSED WITH PREJUDICE.**

### IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on January 20, 2023.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**